IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FELIX W. RODRIGUEZ,** | : | |
| | : | |
| **Petitioner** | : | |
| | : | **CIVIL NO. 3:CV-08-1583** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **DONALD T. VAUGHN,** *et al.,* | : | |
| | : | |
| **Respondents** | : | |

## M E M O R A N D U M

### I.    Introduction

Felix W. Rodriguez, an inmate confined at the Graterford State Correctional Institution, in Graterford, Pennsylvania filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petition challenges his July 17, 1997, convictions imposed by the Court of Common Pleas for York County, Pennsylvania. (Doc. 12, Pet.)  After a jury trial, Mr. Rodriguez was sentenced to an aggregate term of forty to eighty years' imprisonment for criminal homicide and criminal conspiracy to commit murder.

Following careful consideration of the parties' submissions, and for the reasons discussed below, the petition for habeas relief will be denied as well as a certificate of appealability.

## II.     Background

### A.     Factual Background

In disposing of Mr. Rodriguez's direct appeal, the Pennsylvania Superior

Court provided the following background:

> The facts of this case involve numerous parties and events stretching over a period of several days. Late on the night of April 5, 1996, several men broke into a house located at 1048 East Market Street, York County, Pennsylvania. The men then proceeded to assault Jason Nesbit, while asking Nesbit, "[W]here is Adam? Where is the safe? Where is the drugs and money?" (N.T., 7/14/97, Vol. I, at 185). Sometime later, Monique Wells and Michelle Ossorio (a/k/a Michelle Ocasio) returned home and discovered what had occurred. Ossorio had a safe in her room, and the men had stolen $2,500 in cash and a gun. Apparently, Ossorio was holding the gun for Adam Byke, and a large portion of the money belonged to [Felix Rodriguez] (N.T., Vol. II, at 642).
>
> Following her discovery of the above incident, Ossorio immediately called [Rodriguez] and Jason (Will) Colon. [Rodriguez] and Colon thereafter arrived at the house and told Ossorio to call Byke, who was in New York City. After Ossorio reached Byke on the telephone, [Rodriguez] grabbed the phone and told Byke that, "[Y]ou should have taken care of business when you were down here, and you have unfinished business to take care of down here." (N.T. Vol. I, at 308-309.) Ossorio and Wells then went to pick up Byke in New York City. [Rodriguez] and Nesbit drove around York trying to find the people who broke into the house. Although Nesbit could not identify his assailants, he did remember the hat and coat one of them was wearing.
>
> On the evening of April 6 - 7, 1996, all of the parties arrived back at the house. This gathering included [Rodriguez], his brother Eric Rodriguez "E", Colon, Ossorio, Wells, Byke, Nesbit and possibly a man with the street name "Spin" (N.T., Vol. II, at 496.) At some point, the parties began discussing who might be responsible for the burglary. The name of the victim, Edgar Day, came up in the

-2-

conversation.  Day had been seeing Wells so he had access to the house.  Additionally, Ossorio had seen Day talking to Montez Martin, and Martin had recently robbed Byke in a manner similar to the robbery the previous evening.

Upon deciding Day was responsible, [Rodriguez], Colon and Eric Rodriguez became very angry, and "they was all saying about going over there and shooting up the place." (N.T., Vol. I, at 314.)  Eventually, [Rodriguez] and Colon told Wells to page Day.  Wells paged Day once and he did not respond so Wells paged him a second time.  After Day called back, Wells and Ossorio went to his house, however, Day would not get in the car.  Wells and Ossorio then returned to their house, but appellant told Wells to go back and get Day (N.T., Vol. I, at 316.)  Day eventually got into the car with Wells, but upon arriving at Wells' house, Day would not go inside.

At this point, the lights in the house were off, and all of the involved parties were hiding.  Wells walked into the house and related the situation.  Byke then told Ossorio to go out and get in the car with Wells (N.T., Vol. II, at 502).  Ossorio had a gun, and she told Wells to drive down a certain alleyway (N.T., Vols. I & II, at 198, 503).  Wells pulled into a parking space, and two cars stopped alongside her car. Ossorio pulled out her gun and ordered Day out of the car. All of the parties exited their respective vehicles, and Byke walked over and shot Day in the head.  Wells then started screaming and was told, at gunpoint, to shut up.

Following the killing, the parties fled the scene.  Upon arriving back at the house, [Rodriguez] told Wells to go to Day's house and ask if anyone had seen Day (N.T., Vol I, at 322-323).  He thereafter ordered Wells and Ossorio to take Byke back to New York (N.T., Vol. I, at 202-203, 324). Finally, [Rodriguez] and his brother threatened Wells, saying that we "know where your kids are at, and we will kill your kids if you say anything to the cops."  (N.T., Vol. I, at 323.)

In August of 1996, the York County Drug Task Force executed search warrants which resulted in the arrests of [Rodriguez] and Colon.  Subsequently, the Commonwealth filed two separate criminal actions against appellant.  In

one action, appellant was charged with possession with intent to deliver a controlled substance[1] and criminal conspiracy.[2]  No. 3541 C.A. 1996 (York Co.).  In another action, [Rodriguez] was charge with murder of the first, second and third degrees, as well as criminal conspiracy. No. 4073 C.A. 1996 (York Co.)  By Order dated January 2, 1997, the trial court ordered the above actions consolidated for trial.   Thereafter, appellant pled guilty to the drug charges, and [Rodriguez] and Colon received a joint trial on the homicide charges.

(Doc. 27-2, ECF pp. 327-330, *Commonwealth v. Rodriguez*, 726 A.2d 1082 (Pa. Super. Sept. 2, 1998)(Table, No. 870 HBG 1997).)  Mr. Rodriguez plead guilty to possession with intent to deliver and criminal conspiracy with intent to deliver on July 14, 1997.  Sentencing in that matter was deferred pending the resolution of his homicide trial.  *See Commonwealth v. Rodriguez*, CP-67-CR-0003541-1996 (York Ct. Com. Pl.)(drug case docket sheet).[3]

In July 1997, a jury found Mr. Rodriguez guilty of third-degree murder and criminal conspiracy to commit homicide.  *See Commonwealth v. Rodriguez*, CP-67-CR-0004073-1996 (York Ct. Com. Pl.)(homicide case docket sheet).  On August 18, 1997, he was sentenced to an aggregate term of forty to eighty years' imprisonment. He "received consecutive terms of imprisonment, except for the two drug-related offenses ran concurrently with federal sentences arising out of the same conduct." (Doc. 27-2, ECF pp. 317-321, Sentencing Tr.)  He received two consecutive twenty

---

[1]  35 P.S. § 780-113(a)(30).

[2]  18 PA. CON. STAT. ANN. § 903.

[3]  The Court takes judicial notice of the various state docket sheets cited within which are viewable via the Pennsylvania's Judiciary Web Portal at http://ujsportal.pacourts.us/.

to forty years sentences for the third degree murder and conspiracy to commit third degree murder charges.  (*Id*., ECF p. 320 - 321.)  As to the possession with intent to deliver drugs, Mr. Rodriguez received a five to ten years sentence.  He was given an additional five to ten year sentence for the conspiracy to commit possession of drugs with intent to deliver which was set to run concurrent to his federal sentence. (*Id*.)

### B.   Proceedings on Direct Appeal

Mr. Rodriguez filed a direct appeal challenging comments made during the prosecutor's closing argument as to his personal experience as the head of a Drug Task Force.  Mr. Rodriguez also claimed his trial counsel was ineffective for not requesting a jury instruction concerning Michelle Ossorio's prior conviction for a *crimen falsi* offense; that the evidence submitted at trial was insufficient to support the convictions of third-degree murder and conspiracy; and that the verdict was against the weight of the evidence.[4]  (Doc. 27-2, ECF p. 326-336, *Commonwealth v. Rodriguez*, 726 A.2d 1082 (Pa. Super. Sept. 2, 1998)(Table, No. 870 HBG 1997)). The Superior Court of Pennsylvania affirmed the murder conviction and sentence.[5] The Pennsylvania Supreme Court denied review on February 22, 1999.  (*Id*., ECF p. 337, *Commonwealth v. Rodriguez*, 737 A.2d 741 (Pa. Feb. 22, 1999)(Table, No.

---

[4]  Mr. Rodriguez was represented by Attorney Rudy Velez at trial and Attorney Gregory Lensbower on direct appeal.  (Doc. 27-2, ECF p. 350 and p. 365.)

[5]  In doing so the court noted "Although the judgment of sentence reflects appellant's aggregate term of imprisonment, appellant's appeal concerns only issues related to the first action," his homicide conviction.  (Doc. 27-2, ECF pp. 326-27.)

0866 M.D. Alloc. 1998).)  Mr. Rodriguez did not petition the United States Supreme Court for certiorari.


### C.    Proceedings on Post-Conviction Relief

On November 29, 1999, Mr. Rodriguez filed a timely *pro se* petition for post-conviction relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. CONS. STAT. ANN. §§ 9541-9546.  (*Id.*, ECF pp. 338-344, PCRA Pet.)  On February 29, 2000, after Attorney Eugene Campbell was appointed to represent Mr. Rodriguez, a hearing was held before the Honorable John H. Chronister.  (*Id.*, ECF pp. 345-401.)  The trial court, now acting as the PCRA court, denied Mr. Rodriguez's petition.  (*Id.*, ECF pp. 402-409.)  Mr. Rodriguez filed a timely notice of appeal to the Superior Court of Pennsylvania.  (*Id.*, ECF p. 410; *see also Commonwealth v. Rodriguez*, 2001 WL 34382506 (Pa. Super. Aug. 6, 2001), Appellant's Br.)

On appeal, the following claims were raised: (1) ineffectiveness of trial and appellate counsel for failing to object to the prosecutor's closing statement during which the prosecutor commented on Mr. Rodriguez's decision not to testify;[6] (2) trial counsel was ineffective for failing to hire an investigator, impeach witnesses or

---

[6]  Mr. Rodriguez objects to the following statement made by the prosecutor during his closing statement:

> Whose business are the [codefendants] really taking care of? Adam Byke's business or their own drug business? **You might want to ask them yourself.**  Why didn't they do it themselves?  Why didn't they kill him themselves?

(*Id.*, ECF p. 419, citing N.T. 7/17/97 at 622)(emphasis in the original).

-6-

present character testimony; (3) whether Mr. Rodriguez's prior counsel's conduct constituted harmless error; and (4) did the Commonwealth rebut the harm to Mr. Rodriguez caused by the prosecutor's closing argument beyond a reasonable doubt. (*Id.*, ECF p. 417, *Commonwealth v. Rodriguez*, 804 A.3d 60 (Pa. Super. May 20, 2002)(Table, No. 1969 MDA 2000).)  In addressing Mr. Rodriguez's appeal, the superior court noted that "[a]lthough Appellant's judgment of sentence reflects two separate criminal convictions, his direct appeal and the present petition under the PCRA concern only the action compromising the murder and conspiracy charges." (*Id.*, ECF p. 416.)

With respect to Mr. Rodriguez's layered ineffectiveness of counsel claim, the state appellate court held that "[e]ven if we were to find this remark an improper comment on Appellant's failure to testify, it does not warrant a new trial because it was harmless" based on its earlier analysis and decision that "the evidence of [Mr. Rodriguez's] guilt was overwhelming."  (*Id.*, ECF pp. 420-21.)  His remaining claims were declared waived due to his failure "to support them with specific references to the record and proper citation to authority."  (*Id.*, ECF p. 422.)  The superior court affirmed the PCRA court's decision on May 20, 2002.  The Pennsylvania Supreme Court denied Mr. Rodriguez's petition for allowance of appeal on October 16, 2003. (*Id.*, ECF pp. 423-426, *Commonwealth v. Rodriguez*, 833 A.2d 142 (Pa. Oct. 16, 2003)(Table, 754 MAL 2002).

On January 22, 2004, Mr. Rodriguez filed a second PCRA petition.  (Doc. 27-2, ECF p. 427.)  The PCRA court notified Mr. Rodriguez of its intent to dismiss the petition as untimely and gave him the opportunity to respond.  After Mr. Rodriguez

failed to reply, the PCRA court denied the petition on July 20, 2004, as time barred. (*Id*., ECF pp. 427-429.)

Mr. Rodriguez filed an appeal with the Pennsylvania Superior Court.  Citing the absence of Mr. Rodriguez's Second PCRA petition in the certified record, the superior court held that he waived his right to allege or prove an exception to the PCRA time-bar.  (*Id*., ECF pp. 438-39.)  Nonetheless, the court reviewed Mr. Rodriguez's for the purpose of determining whether they satisfied any of the exceptions to the PCRA time-bar.  The court identified the following claims, all of which allege the ineffectiveness of Mr. Rodriguez's trial and/or PCRA counsel:

> 1.  trial counsel erroneously advised Rodriguez to plead guilty to drug charges that he previously pled guilty to in federal court;
>
> 2.  trial counsel failed to object to the admission of evidence of prior bad acts;
>
> 3.  trial counsel failed to object to improper remarks by the prosecutor during closing argument;
>
> 4.  trial counsel allowed an illegal sentence to go unchallenged;
>
> 5.  PCRA counsel failed to raise the above allegations of trial counsel's ineffectiveness.

(*Id*., ECF p. 439.)  The superior court held that none of the claims presented "f[e]ll within the three enumerated exceptions to the PCRA time-bar."  (*Id*., ECF p. 440.) Accordingly, on May 10, 2005, the Pennsylvania Superior Court affirmed the dismissal of the second PCRA as time-barred.  (*Id*., ECF pp. 436-440, *Commonwealth v. Rodriguez*, 880 A.2d 11 (Pa. Super. May 10, 2005)(Table, 1383

MDA 2004).)  The Pennsylvania Supreme Court denied Petitioner's Petition for

Appeal on December 29, 2005.  (*Id*., ECF p. 444, *Commonwealth v. Rivera*, 628

MDA 2005 (Pa. Dec. 29, 2005).)


### D.    Present Habeas Proceedings

As early as November 11, 2003, Mr. Rodriguez filed two § 2254 petitions for

writ of habeas corpus in the United States District Court for the Eastern District of

Pennsylvania, Civil Action Numbers: 03-CV-6242 and 03-CV-6315.  On January 5,

2004, the Eastern District consolidated both matters under 03-CV-6242 and granted

Petitioner's Motion to Stay his habeas proceedings so he may file a second or

subsequent PCRA Petition.  (Doc. 3.)

On June 9, 2008, the Eastern District of Pennsylvania reinstated Mr.

Rodriguez's habeas petition after his second PCRA petition was denied as untimely.

(Doc. 4.)  On July 17, 2008, Mr. Rodriguez's original petition was transferred from

the Eastern District of Pennsylvania to this court and opened under the present

docket number.  *See* Doc. 8.

In his Petition, Mr. Rodriguez's raises four ineffectiveness of counsel claims

due to counsel: (1) erroneously advising him to plead guilty to state drug charges

that he had already plead guilty to in federal court; (2) failing to object to the

improper admission of his state drug conviction; (3) failing to object to the

prosecution's prejudicial remarks concerning his decision not to testify at trial; and

(4) for allowing his unconstitutional detention to go unchallenged.  (Doc. 1, Mem. in

Supp. Habeas Pet. and Doc. 12, Pet.)

In accordance with *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999) and *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), this court issued formal notice to Mr. Rodriguez that he could either have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition, absent certification by the court of appeals, or withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act (AEDPA).  (Doc. 13.)  On October 30, 2008, Mr. Rodriguez returned the notice of election form, indicating that he wished to proceed with his petition for writ of habeas corpus as filed.  (Doc. 14.)

A show cause order was issued on November 13, 2008.  (Doc. 15.)  On December 24, 2008, the respondents filed a Response to the Petition alleging it was untimely filed.  (Doc. 19, Resp.)

By Order of November 21, 2011, this court determined the Petition to be timely filed and directed respondents to file an answer to the petition.  (Doc. 24.)  On January 25, 2012, respondents' filed their a response to the Petition.  (Doc. 27.)  Mr. Rodriguez filed a reply.  (Doc. 29.)  On February 10, 2012, respondents filed an amended response to correct an error in a footnote.  (Doc. 30.)  On March 2, 2012, Mr. Rodriguez filed a supplemental traverse addressing the respondents' amended filing and presenting new arguments and claims.  (Doc. 31.)  The respondents filed a supplemental response.  (Doc. 34.)

III.    **Governing Legal Principles**

A.    **Standard of Review**

Since Mr. Rodriguez filed his Petition after the effective date of the

Antiterrorism and Effective Death Penalty of 1996 (AEDPA), review of his claims is

governed by 28 U.S.C. § 2254(d).  *Lindh v. Murphy*, 521 U.S. 320, 326-27, 117

S.Ct. 2059, 138 L.Ed.2d 481 (1997).  Under 28 U.S.C. § 2254(d), a writ of habeas

corpus on behalf of a person in custody pursuant to the judgment of a state court

shall not be granted with respect to any claim that was adjudicated on the merits in

state court proceedings unless he can show that the prior adjudication: (1) resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly

established law, or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of evidence presented in the state court.  28

U.S.C. § 2254(d).  A state court decision is "contrary to" federal law if the state court

arrives at a conclusion opposite to that reached by the United States Supreme Court

on a question of law or reaches an opposite result in a case involving facts

materially indistinguishable from relevant United States Supreme Court precedent.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).

The court may grant habeas relief under the "unreasonable application" clause if the

state court identifies the correct legal principle from United States Supreme Court

precedent but unreasonably applies that principle to the facts of the petitioner's

case.  *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534-35, 156 L.Ed.2d

471 (2003).

Under this deferential standard, the court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383, 120 S.Ct. 1495, 1508, 146 L.Ed.2d 389 (2000).  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed correct. The presumption of correctness applies to both implicit and explicit factual findings, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010).

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 410-11, 120 S.Ct. at 1522.  The state court's decision must be "objectively unreasonable." *Wiggins*, 539 U.S. at 521, 123 S.Ct. at 2535.  This is a difficult standard to meet: "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, ____, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004)).  "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*, 562 U.S. at __, 131 S.Ct. at 786.  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or

... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id*.  "Under this highly deferential standard, '[a federal habeas court] will not surmise whether the state court reached the best or even the correct result in [a] case; rather, [the court] will determine only 'whether the state court's application of [federal law] was unreasonable.'" *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 544 (3d Cir. 2014)(quoting *Roundtree v. Balicki*, 640 F.3d 530, 538 (3d Cir. 2011).)

However, "if a properly preserved claim was not addressed by the state court on the merits, the deferential standards of the AEDPA do not apply." *Id*. at 392.  In such instances, a "federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact." *Id*. (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

### B.    Exhaustion and Procedural Default

A habeas petitioner must clear two procedural hurdles before the court may reach the merit of his habeas corpus petition: exhaustion of remedies and procedural default.

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.

*Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).  A habeas petitioner retains the burden of showing that all of the claims alleged have been "fairly presented" to state courts.  To "fairly present" a claim, a petitioner must present the same factual and legal basis for the claim to the state court to put the state court "on notice that a federal claim is being asserted." *Greene v. Palakovich*, 606 F.3d 85, 93 (3d Cir. 2010)(quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).  A federal claim not fairly presented to the reviewing state court may be either unexhausted or procedurally defaulted.

A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).[7]  The petitioner has the burden of establishing that the exhaustion requirement has been met.  *Ross v. Petsock*, 868 F.2d 639, 643 (3d Cir. 1989); *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts.  *Lines v.*

---

[7]  Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the Common Pleas Court and then the Pennsylvania Superior Court either on direct or PCRA appeal, are considered exhausted for the purpose of federal habeas corpus relief under § 2254.  *See In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218, Judicial Administration Docket No. 1 (May 5, 2000)(*per curiam*); *see also Lambert v. Blackwell*, 387 F.3d 210, 233-34 (2004).

*Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).  Although treated as technically

exhausted, such claims are nonetheless procedurally defaulted.  *Lines*, 208 F.3d at

160; *Coleman v. Thompson*, 501 U.S. 722, 750 - 751, 111 S.Ct. 2546, 2565, 115

L.Ed.2d 640 (1991).  Similarly, if a petitioner presents a habeas claim to the state's

highest court, and that court "clearly and expressly" refuses to review the merits of

the claim due to an independent and adequate state procedure rule, the claim is

exhausted but procedurally defaulted.  *See Coleman*, 501 U.S. at 750, 111 S.Ct. at

2565.

A federal court cannot review the merits of procedurally defaulted claims

unless the petitioner demonstrates either: (1) "cause" for the procedural default and

"actual prejudice" as a result of the alleged violation of federal law;[8] or (2) failure to

consider the claims will result in a "fundamental miscarriage of justice."  *Edwards v.*

*Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000);

*Wenger v. Frank*, 266 F.3d 218, 223-224 (3d Cir. 2001).  To establish "cause," a

petitioner must establish that "some objective factor external to the defense"

impeded his ability to raise the claim in state court.  *Murray v. Carrier*, 477 U.S. 478,

488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).   Once "cause" has been

successfully demonstrated, a petitioner must then also prove "actual prejudice."  To

establish "actual prejudice," "the habeas petitioner must show 'not merely that the

errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual*

---

[8]   Where petitioner fails to establish cause, the court need not reach the prejudice prong of the claim before denying it.  *See Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986).

and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494, 106 S.Ct. at 2648 (citing *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982)(emphasis in original)).

In order for a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995)(quoting *Carrier*, 477 U.S. at 496, 106 S.Ct. at 2649). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998). "[A] petitioner asserting actual innocence . . . must rely on 'reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence'" not presented at trial. *Munchinski v. Wilson*, 694 F.3d 308, 337-38 (3d Cir. 2012)(citing *Schlup*, 513 U.S. at 324, 115 S.Ct. at 865). New evidence which tends to undermine the credibility of a witness "will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness'] account of petitioner's actions. *Sawyer v. Whitley*, 505 U.S. 333, 349, 112 S.Ct. 2514, 2524, 120 L.Ed.2d 269 (1992).

There exists a final, very narrowly carved, exception to the procedural default rule.  The United States Supreme Court held in *Martinez v. Ryan*, ___ U.S. ___, ___, 132 S.Ct. 1309, 1320, 182 L.Ed.2d 272 (2012), that a petitioner may establish cause to excuse procedural default of claims of ineffective assistance of trial counsel when

post-conviction review is the first time a petitioner can bring such claims and petitioner had either ineffective collateral appeal counsel or no counsel at all.  *Id.* at _ _, 132 S.Ct. 1320-21.  The Supreme Court cautioned that its holding did not apply to counsel's error in other kinds of proceedings, such as appeals from initial-review collateral proceedings, second or successive collateral petitions, or petitions for discretionary review in state appellate courts.  *Id.* at ____, 132 S.Ct. at 1320.  In order to establish "cause," petitioner must show that collateral appeal counsel was not appointed or was ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 268-69, 80 L.Ed.2d 674  (1984).  *Martinez*, ____ U.S. at ____, 132 S.Ct. at 1318.  Further, petitioner must also demonstrate that the underlying ineffectiveness of trial counsel claim is "substantial" and has "some merit."  *Id.* at ____, 132 S.Ct. at 1318.

Finally, to the extent a petitioner presents unexhausted claims in a habeas petition, the court may nonetheless deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007)("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion.")

## C.      AEDPA's Statute of Limitations

The AEDPA provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  The AEDPA's statute of limitations must be applied "on a claim-by-claim basis."  *Fielder v. Varner*, 379 F.3d 113, 118 (3d Cir. 2004).  The limitations period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d), which provides in pertinent part:

> (1) A one-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -
>
> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration for seeking such review;
>
> (B) the date on which the impediment to filing an applications created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Pursuant to § 2244(d), evaluation of the timeliness of a § 2254 petition requires a determination of, first, when the pertinent judgment became "final," and, second, the period of time during which an application for state post-conviction relief was "properly filed" and "pending."  A state-court criminal judgment becomes "final" within the meaning of § 2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court.  *See Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000); *Morris v. Horn*, 187 F.3d 333, 337 n. 1 (3d Cir. 1999); U.S. Supt. Ct. R. 13.  However, where a state prisoner does not seek discretionary review in the state's highest court, the judgment of conviction becomes "final" on the date that the time for seeking such review, ninety-days, expires.  *See Jenkins v. Supt. of Laurel Highlands*, 705 F.3d 80, 84 (3d Cir. 2014)(citing *Gonzalez v. Thaler*, ___ U.S. ___, ____, 132 S.Ct. 641, 656, 181 L.Ed.2d 619 (2012)).

Once the federal statute of limitations is triggered and begins to run, the limitations period can be tolled in two ways: statutory tolling and equitable tolling. *See* 28 U.S.C. § 2244(d) (enumerating statutory tolling provisions); *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010)(holding AEDPA's time limit is subject to the doctrine of equitable tolling).

Statutory tolling occurs if, prior to the expiration of the AEDPA one-year, a state criminal defendant timely sought collateral review.  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward

any period of limitation ... ."  28 U.S.C. § 2244(d)(2); *Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2009).  A properly filed state petition "is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 417, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005) (where the state court rejects petitioner's PCRA petition as untimely, the petition "was not 'properly filed' and [petitioner is] not entitled to statutory tolling under § 2244(d)(2)").  When a state petition was untimely as a matter of state law it cannot be reconsidered by a federal habeas court.  *Satterfield v. Johnson*, 434 F.3d 185, 192 (3d Cir. 2005) ("If a state court determines that a petition is untimely, that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits.")(internal quotations omitted).

Statutory tolling applies to those periods when an application for discretionary review is pending in an appellate court of the denial of post-conviction relief.  *See Kindler v. Horn*, 542 F.3d 70, 77 n.5 (3d Cir. 2008)(noting that the petitioner's PCRA petition was pending at least through the date the Pennsylvania Supreme Court denied his petition for review), *rev'd on other grounds, Beard v. Kindler*, 558 U.S. 53, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009)).  It also applies to the time period for seeking state-court appellate review even if such review is not sought.  *Jenkins, supra*, 705 F.3d at 85 n.4.  However, the time during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition does not toll the one year statute of limitations

under 28 U.S.C. § 2244(d)(2).  *See Lawrence v. Florida*, 549 U.S. 327, 329, 127 S.Ct. 1079, 1081, 166 L.Ed.2d 924 (2007)(a state application for post-conviction relief is not pending under section 2244(d)(2) "when the state courts have entered a final judgment in the matter but a petition for certiorari has been filed" in the Supreme Court).

The AEDPA one-year limitations period may also be subject to equitable tolling.  *See Jenkins,* 705 F.3d at 88-89.  For equitable tolling to apply, the petitioner must show two things: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010) (quoted cases omitted).  The determination is made on a case-by-case basis.  *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013).  "In each case, there is a need for 'flexibility,' 'avoiding mechanical rules,' and 'awareness ... that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.'"  *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011) (quoting *Holland*, 560 U.S. at 650, 130 S.Ct. at 2563).  Thus, there are "no bright lines in determining whether equitable tolling is warranted in a given case."  *Id.*  The Third Circuit Court of Appeals has explained that "equitable tolling is appropriate when principles of equity would make rigid application of a limitation period unfair, but that a court should be sparing in its use of the doctrine."  *Ross*, 712 F.3d at 799. (citing *Pabon*, 654 F.3d at 399; *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999)).

Finally, it is noted that a plea of "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a

procedural bar ... or ...expiration of the statute of limitations." *McQuiggins v.*

*Perkins*, ___ U.S. ___, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013).   However,

cognizable claims of "actual innocence" are "extremely rare." *Id*.   To establish actual

innocence, a petitioner must show that "in light of new evidence, no juror, acting

reasonably, would have voted to find him guilty beyond a reasonable doubt."

*Schlup*, 513 U.S. at 329, 115 S.Ct. at 868.   "To be credible, such a claim requires

petitioner to support his allegations of constitutional error with new reliable evidence

. . . that was not presented at trial." *Id*. at 324, 115 S.Ct. at 865.


    **D.**    **Standard for Ineffective Assistance of Counsel Claims**

    The Sixth Amendment right to counsel is the right to effective assistance of

counsel. *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063.   To warrant reversal of a

conviction, a prisoner must show (1) that his counsel's performance was deficient

and (2) that the deficient performance prejudiced his defense.   *Id*., at 687, 104 S.Ct.

at 2064; *Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008).   The *Strickland* test is

conjunctive and a habeas petitioner must establish both the deficiency in

performance prong as well as the prejudice prong.   *See Strickland*, 466 U.S. at 687,

104 S.Ct. at 2064; *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010).   Though

*Strickland*'s ineffectiveness inquiry contains both a performance and prejudice

component, the Supreme Court has made clear that "[i]f it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course

should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.   "[T]here is no

reason for a court deciding an ineffective assistance claim ... even to address both

components of the inquiry if the defendant makes an insufficient showing on one."
*Marshall v. Hendricks*, 307 F.3d 36, 86 - 87 (3d Cir. 2002) (internal citation and
quotation marks omitted).

To prove deficient performance, a prisoner must show that his "counsel's
representation fell below an objective standard of reasonableness." *Id.* at 688, 104
S.Ct. at 2064.  The court will consider whether counsel's performance was
reasonable under all of the circumstances. *Id.*  The court's "scrutiny of counsel's
performance must be highly deferential." *See id.* at 689, 104 S.Ct. at 2065.  That is,
there is a "strong presumption that counsel's conduct falls within the wide range of
reasonable professional assistance." *Id.*  In raising an ineffective assistance of
counsel claim, the petitioner "must first identify the acts or omissions of counsel that
are allegedly not to have been the result of reasonable professional judgment." *Id.*
at 690, 104 S.Ct. at 2066.  Next, the court must determine whether "in light of all the
circumstances" those acts or omissions fall outside of the "wide range of
professionally competent assistance." *Id.*

A petitioner "must overcome the presumption that, under the circumstances,
the challenged action might be considered sound trial strategy." *United States v
Hankerson,* 496 F.3d 303, 310 (3d Cir. 2007)(quoting *Strickland*, 466 at 689, 104
S.Ct. at 2065).  This presumption is overcome by showing either that petitioner's
counsel's "conduct was not, in fact, part of a strategy or by showing that the strategy
employed was unsound." *Thomas v. Varner*, 428 F.3d 491, 499 - 500 (3d Cir.
2005).  When the record does not disclose counsel's actual strategy, the

presumption is rebutted by a "showing that no sound strategy ... could have supported the conduct." *Id.* at 500.

To prove prejudice, a convicted defendant must affirmatively prove that counsel's alleged errors "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Finally, it is well-established that an attorney cannot be ineffective for failing to raise a meritless argument or objection. *See Ross v. Dist. Attorney of the Cnty., of* Allegheny, 672 F.3d 198, 211, n. 10 (3d Cir. 2012); *see also United States v. Barnes*, 324 F.3d 135, 139 - 40 (3d Cir. 2003)(rejecting ineffectiveness claim predicated upon failure to advance a non-meritorious claim).

## IV.      Discussion

Mr. Rodriguez's habeas petition contains four grounds for relief. Three of the four claims are procedurally defaulted. All claims are without merit. The court will now address each claim in turn.

### A.      Claim I - Whether Petitioner's Due Process and Equal Protection Rights were Violated when Trial Counsel Erroneously Advised the Petitioner to Plead Guilty to Drug Charges that the Petitioner Previously Plead Guilty to in Federal Court.

In Claim I, Mr. Rodriguez claims that his trial counsel was ineffective by allowing him to plead guilty to the state drug charges when they were barred by the Double Jeopardy Clause of the Fifth Amendment.  (Doc. 1, ECF pp. 7 - 11.)  In support of his claim, he cites the following exchange between his counsel and the sentencing court:

> MR. VELEZ: Also, Judge, there is one other matter regarding the conspiracy charge, the drug conspiracy charge, which I would move to dismiss on double jeopardy grounds.  We left that open, Judge, for sentencing, am I correct?
>
> THE COURT: Well, no, I don't think we left that open that you could move to dismiss.  They pled guilty.
>
> MR. VELEZ: He pled guilty to one of those counts.  I believe there was another count, the conspiracy.
>
> THE COURT: No, I believe he pled guilty to all the counts, but there was an understanding that the sentence that he would receive would be concurrent with the federal sentence if you argue successfully that it was the same conduct, and I am prepared to concede that.
>
> MR. VELEZ: It is the same conduct, Judge?
>
> THE COURT: Yes.
>
> MR. VELEZ: He took that plea on that case first in federal court.
>
> THE COURT: I am prepared to concede that.
>
> MR. VELEZ: Concurrent time on the drug cases here?
>
> THE COURT: To the federal case.

(Doc. 27-2, ECF pp. 318 - 19.)  Upon careful review, habeas relief on this claim will be dismissed as time-barred and without merit.

-25-

### 1.    Mr. Rodriguez's First Claim is Time-Barred.

By Order dated November 21, 2011, this court previously addressed the question of the timeliness of Mr. Rodriguez's habeas petition.  *See* Doc. 24. Respondents, however, argue that while the remaining claims presented in Mr. Rodriguez's petition are timely, Claim One is not.  (Doc. 27, ECF pp. 12-13.)  Thus, the court will revisit the issue.

On July 14, 1997, Mr. Rodriguez plead guilty to possession with intent to deliver and criminal conspiracy.  Sentencing on this matter was deferred until after Mr. Rodriguez's homicide trial.  Mr. Rodriguez was sentenced in his drug case, and homicide case, on August 18, 1997.  While he did seek direct and post-conviction review of his homicide conviction, he never filed an appeal related to his drug case. This finding is bolstered by the Pennsylvania Superior Court's opinion addressing his direct appeal of his murder conviction.

> Appellant, Felix W. Rodriguez, challenges the judgment of sentence of fifty (50) to one hundred (100) years' imprisonment entered on August 18, 1997, following appellant's convictions in two separate criminal actions.  In the first action, a jury convicted appellant of murder of the third degree and criminal conspiracy.  In the second action, appellant pled guilty to possession with intent to deliver a controlled substance and criminal conspiracy.  Although the judgment of sentence reflects appellant's aggregate term of imprisonment, appellant's appeal *concerns only issues related to the first action*.

(Doc. 27-3, ECF pp. 326 - 27)(emphasis added).  Additionally, the Pennsylvania Superior Court in addressing the PCRA Court's September 27, 2000, Order denying post-conviction relief specifically noted that:

> Although [Mr. Rodriguez's] judgment of sentence reflects two separate criminal convictions, his direct appeal and the present petition under the PCRA concern *only the action comprising the murder and conspiracy charges*.

(Doc. 27-2, ECF p. 416)(emphasis added).  Thus, the Pennsylvania Superior Court specifically held that both his direct and PCRA appeals were limited solely to his murder convictions and not his drug charge.  The court's review of the state drug docket does not reflect an independent direct or post-conviction appeal being filed in that matter.  Mr. Rodriguez conceded this point during his PCRA hearing:

> Q.  Did you ever file an appeal in your drug conviction?
>
> A.  The first time, no.
>
> Q.  So the first —
>
> A.  I did file in the federal court.
>
> Q.  But you never filed a state court of appeal of your drug conviction, correct?
>
> A.  Not at the moment because I file — when I put in my homicide, it was too late at the moment for me to file with it.  So I could only put one motion at a time, so I was told that if my motion is denied, that when I file again that I could bring it up the next time.
>
> Q.  Did you ever discuss filing any appellate issues on your drug conviction with Attorney Lensbower?
>
> A.  No, because like I told you, at that time I already found out that I couldn't do anything at the moment.  I already had filed.

(Doc. 27-2, ECF pp. 370-71.)

Based on the record, the court concludes that Mr. Rodriguez's drug conviction became final for federal habeas purposes thirty days after sentencing, or

on September 17, 1997.  His one-year limitations period to file a timely habeas

corpus petition, related to his drug charge, expired on September 18, 1998, without

the benefit of any statutory tolling.  The instant habeas corpus petition was filed on

November 11, 2003, more than five (5) years, one (1) month, and twenty-four (24)

days late.  Mr. Rodriguez has not presented any basis for a finding of equitable

tolling of the statutory limitations period.  Thus, this claim is time-barred.


     **2.**     **Mr. Rodriguez's Underlying Double Jeopardy Claim is Meritless.**

Alternatively, respondents argue that even if found to be timely, Mr.

Rodriguez did not properly exhaust this claim as it was not properly presented to the

state courts.  (Doc. 30, ECF p. 16.)  The court need not address respondents'

exhaustion argument as the underlying double jeopardy claim lacks merit.

Mr. Rodriguez argues that his Fifth Amendment rights were violated when he

was charged with, and plead guilty to, federal and state drug charges that arose out

of the same conduct.  He claims his trial counsel should have been aware of this

constitutional violation and prevented him from pleading guilty to the state drug

charge.  Mr. Rodriguez also extrapolates that had he not plead guilty to the state

drug charge, the prosecution would not have been able to use that conviction to

build its homicide case against him, and he would not have been convicted of third

degree murder.  (Doc. 1, ECF p. 10.)  Based on the dual sovereignty doctrine, Mr.

Rodriguez's double jeopardy claim is unfounded and therefore his ineffectiveness of

counsel claim based on counsel's alleged failure to object to raise a double jeopardy

objection to his drug charge is meritless as "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Wertz v. Vaughn*, 228 F.3d 178, 2001 (3d Cir. 2000).

The record before the court reflects that Mr. Rodriguez's counsel and the sentencing court spent considerable time discussing whether or not there was a double jeopardy issue involved before accepting his guilty plea.  First, Mr. Rodriguez placed on the record "how [he] felt about" the plea.  (Doc. 27-1, ECF p. 52.)  When discussing the state drug charges, Mr. Rodriguez stated:  "No way am I going to trial on something I know I am guilty of."  (*Id.*)  Next, after conducting the plea colloquy, the sentencing court noted:

> Defendants have plead guilty to a conspiracy charge in Federal Court and to the extent that conduct may be included in this same conduct there may be an argument that the Defendant should receive a concurrent sentence, and the Defendants will be able to make that argument at the time of sentencing.

(*Id.*, ECF p. 53.)  At sentencing, Mr. Rodriguez's counsel moved to dismiss the drug conspiracy charge on double jeopardy grounds.  (Doc. 27-2, ECF p. 381.)  The sentencing court denied the request stating:

> No, I believe [Mr. Rodriguez] plead guilty to all the counts, but there was an understanding that the sentence that he would receive would be concurrent with the federal sentence if you argue successfully that it was the same conduct, and I am prepared to concede that.

(*Id.*, ECF p. 319.)  The sentencing court added:

> We do think that the drug transactions arise out of the same conduct as the federal charges, and, therefore, we will impose a concurrent sentence on the drug case with the federal drug case.

(*Id.*, ECF p. 320.)

Additionally, at Mr. Rodriguez's PCRA hearing, where the double jeopardy issue was again raised in the context of an ineffectiveness of counsel claim, the PCRA court held:

> The next issue is that double jeopardy elements exist as to the federal court's sentence and the state sentence. That issue was raised in the trial and at the time of sentencing, and it was ruled against the Defendant. Therefore, counsel can't have been ineffective in failing to raise it.
>
> Further, there would be no double jeopardy because the federal jurisdiction and the state jurisdiction are separate, and the federal charges covered a fairly long period of time during which the Defendant was dealing drugs while the Pennsylvania local charges involved one specific incident.

(*Id.*, ECF pp. 404-05.)

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution commands in part that a person shall not "be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  "The Fifth Amendment right to be free from duplicative prosecutions and punishments is a hallmark of American jurisprudence."  *United States v. Jackson*, 443 F.3d 293, 301 (3d Cir. 2006).  However, the reach of this protection is limited by several important exceptions, including the doctrine of dual sovereignty.  *United States v. Piekarsky*, 687 F.3d 134, 149 (3d Cir. 2012).  Under the dual sovereignty doctrine, "a state prosecution does not bar a subsequent federal prosecution for the same conduct."  (*Id.*)  "The 'dual sovereignty' doctrine rests on the premise that, where both sovereigns legitimately claim a strong interest in penalizing the same behavior, they have concurrent jurisdiction to vindicate those interests and neither need yield to the other."  *United States v. Pungitore*, 910 F.2d

1084, 1105 (3d Cir. 1990); *United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed.314 (1922) ("[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.").  The Supreme Court "has plainly and repeatedly stated that two identical offenses are not the 'same offence' within the meaning of the Double Jeopardy Clause if they are prosecuted by different sovereigns."  *Heath v. Alabama*, 474 U.S. 82, 92, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985).  But the dual sovereignty doctrine is limited, by its own terms, to cases where "the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns."  *Id*., at 88, 106 S.Ct. at 437.  States are considered to be "separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own 'inherent sovereignty,' not from the Federal Government."  *Id.*  Accordingly, the Commonwealth of Pennsylvania is a separate sovereign from the Federal Government for the purposes of double jeopardy.  *Id*.

In *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), the Supreme Court held that successive state and federal prosecutions are constitutionally permissible because every citizen of the federal government is also a citizen of a state and both sovereigns have authority to punish individuals for infractions of the law.  *Id*. at 131–32, 79 S.Ct. at 682.  The Double Jeopardy Clause presents no barrier to prosecution in both courts absent evidence of collusion between federal and state law enforcement officials, i.e. that the subsequent

prosecution was merely "a sham and a cover for a federal prosecution."  *Id.* at 124, 79 S.Ct. at 678.

In the present case, and based on the record before the court, Mr. Rodriguez has offered no evidence to support a claim that the state prosecution was a "sham" or "cover" for the federal prosecution.  Without presentation of any supporting evidence, Mr. Rodriguez argues that the State authorities acted as a tool for the federal government.  Mr. Rodriguez cannot circumvent the "dual sovereignty" doctrine based on speculation alone.  For these reasons, the court concludes that reasonable jurists could not debate the fact that Mr. Rodriguez has failed to allege a cognizable violation of the Double Jeopardy Clause of the United States Constitution.  In light of the lack of merit of his double jeopardy claim, counsel cannot be found ineffective for raising a meritless claim.  Alternatively, Mr. Rodriguez's ineffectiveness claim is denied as he cannot satisfy the first prong of the *Strickland* test as to this claim because his trial counsel did in fact present a double jeopardy argument to the trial court during sentencing.  Accordingly, Claim One of Mr. Rodriguez's habeas petition will be denied.


**B.    Claim 2 - Whether Petitioner's Due Process and Equal Protection Rights were Violated when Trial Counsel Failed to Object to The Improper Admission of Prior Bad Acts.**

Mr. Rodriguez alleges that his trial counsel was ineffective when he failed to object to, or seek a curative instruction, concerning the prosecution's introduction of his state drug conviction during his homicide trial.  (Doc. 1, ECF p. 12.)  In support of

his claim, he cites to a portion of the prosecution's closing argument.  *See* Doc. 1, ECF p. 12; *see also* Doc. 27-2, ECF pp. 246-250.  Based on a review of the record before the court, including Mr. Rodriguez's criminal trial transcript, the court will deny habeas relief on this claim as it is procedurally defaulted and nonetheless without merit.

### 1.    Mr. Rodriguez's Claim is Procedurally Defaulted.

Respondents argue that Mr. Rodriguez's Second Claim is procedurally defaulted.  (Doc. 30, ECF p. 21.)  The court agrees.

Mr. Rodriguez presented his Second Claim to the state court by way of his Second PCRA petition which was filed after his habeas petition.  (Doc. 27-2, ECF p. 419.)  The Pennsylvania Superior Court, after considering whether the issues presented fell within the three enumerated exceptions to the PCRA time-bar, affirmed the dismissal of the petition as time-barred.  (*Id.*, ECF p. 437.)  Thus, this claim is considered procedurally defaulted.

### 2.    Mr. Rodriguez's Underlying Prosecutorial Misconduct Claim is Meritless.

Mr. Rodriguez argues "the prosecution egregiously introduced the drug conviction ... as evidence against the petitioner in the murder trial."  (Doc. 1, ECF p. 12.)  He adds that "[t]he drug conviction ... was not relevant in [his] murder trial"  and that the prosecution's "entire case against [him] was based upon the prior bad acts" which prejudiced the jury against him.  (*Id.*; *see also* Doc. 27-2, ECF pp. 246 - 250.)  Mr. Rodriguez argues that had the prosecution not introduced the fact of his state

drug conviction, he would not have been found guilty of third degree murder.  He

claims he is "actually innocent" of that offense.[9]  As Respondents' suggest, Mr.

Rodriguez's Second Claim "is factually false" as the "prosecutor did not introduce

any evidence at trial that the defendant previously pled guilty or [had] been

convicted of drug related offenses."  (Doc. 30, ECF p. 21 and p. 23.)

The Pennsylvania Superior Court rejected Mr. Rodriguez's claim of

ineffectiveness based on lack of prejudice.  (*Id.*, ECF pp. 419 - 421.)  The superior

court examined the portion of the prosecution's closing argument to which Mr.

Rodriguez cited in support of his ineffectiveness claim.  The state court held that in

the prosecutor's closing referenced the trial testimony of several Commonwealth

witnesses who testified dealing drugs for Mr. Rodriguez.  It further held that the

prosecution appropriately argued to the jury that Mr. Rodriguez's drug dealing

served as motive for his involvement in the death of Edgar Day.  It held that these

statements were nothing more than a reminder to the jury of the evidence already

presented to it during trial as well as allowable inferences that could be drawn from

that evidence.  Finally, the trial court gave the following instruction to ensure the

limited emphasis the jury should place on Mr. Rodriguez's referenced drug activities:

> There was indications in the testimony that the Defendants
> are drug dealers. Now, normally you can't bring into a case

---

[9]  With respect to Mr. Rodriguez's claim of "actual innocence," his argument does not fall within the meaning of *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(requiring that a claim of actual innocence to excuse a default be supported by new, reliable evidence such that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" had it considered the new evidence with the other evidence presented).  Thus, to the extent Mr. Rodriguez is asserting an "actual innocence" claim, it is denied.  Nonetheless, as invited to do so by 28 U.S.C. § 2254(b)(2), the court will deny Mr. Rodriguez's Second Claim on the merits.

the fact that the Defendant has committed another crime. In other words, each one is separate. You have to consider it in its own right.

However, the fact that the Defendants were involved in drug dealing was a factor in the case to the extent of understanding the background of the case of what happened and why it happened, and, therefore it is permissible to look at the prior activity in that context.

However, it would not be appropriate to say, well they are drug dealers, who cares, we will convict them no matter what. You can't say they are bad and evil just because they were committing the drug activity.

There has been testimony about it. You have to say even though they are drug dealers and even though that's connected, I have to be satisfied by the evidence in this case that they are guilty, and you can't say because they are bad persons that they will forge that they are guilty. If you have to look at the actual evidence of the case and be satisfied that they are guilty.

(Doc. 27-2, ECF pp. 277 - 78.)

In order for a prosecutorial misconduct claim to warrant federal habeas relief, prosecutor's improper remarks must have infected the trial with unfairness as to make the resulting conviction a denial of due process. *See Parker v. Matthews*, __ U.S. __, ___, 132 S.Ct. 2148, 2153, 183 L.Ed.2d 32 (2012). To grant habeas relief, the court must conclude that the state court's rejection of the prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at ___, 132 S.Ct. at 2155 (quoting *Harrington v. Richter*, 562 U.S. at ___, 131 S.Ct. at 786–87). A prosecutorial misconduct claim must be examined in "light of the record as a whole" in order to determine whether the conduct "had a

substantial and injurious effect or influence" on the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993). The Third Circuit Court of Appeals has similarly held that the necessary inquiry involves examining "the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

Pursuant to Fed. R. Evid. 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Such evidence may be admissible for another relevant purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Parties may not introduce "evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge."  *Huddleston v. United States*, 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988).  As noted above, "one proper purpose under 404(b) is supplying helpful background information to the factfinder."  *United States v. Green*, 617 F.3d 233, 250 (3d Cir. 2010).  Under Rule 404(b), "[p]rior-act evidence is admissible only if it is (1) offered for a proper purpose under Rule 404(b)(2); (2) relevant to that purpose; (3) sufficiently probative under the Rule 403 balancing

requirement,[10] and (4) be accompanied by a limiting instruction, if requested."

*United States v. Davis*, 726 F.3d 434, 441 (3d Cir. 2013).  The proffered evidence

must fit "into a chain of logical inferences, no link of which may be the inference that

the defendant has the propensity to commit the crime charged."  *United States v.*

*Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994).

Considering all of these factors, and this court's review of the record, the

state court's rejection of Mr. Rodriguez's claim of ineffectiveness based on counsel's

failure to object to alleged prosecutorial misconduct was not contrary to, or an

unreasonable application of, clearly established federal law, and it was not a

decision based on an unreasonable determination of the evidence presented.

*See* 28 U.S.C. § 2254(d)(1) and (2).  First, it is noted that during trial, several

Commonwealth witnesses admitted dealing drugs for Mr. Rodriguez and his co-

defendant.  Second, upon a review of the prosecutor's entire closing statement,

there is no mention of Mr. Rodriguez's state criminal conviction.  Third, to the extent

the prosecution made reference to his drug trafficking activities, the introduction of

this testimony was admissible extrinsic evidence related to the evidence of his

motive for seeking the victim's death and the natural development of the facts of the

case.  Fourth, in the closing arguments of both the prosecution and Mr. Rodriguez's

---

[10]  Rule 403 provides:

> The court may exclude relevant evidence if its probative value
> is substantially outweighed by a danger of one or more of the
> following: unfair prejudice, confusing the issues, misleading
> the jury, undue delay, wasting time, or needlessly presenting
> cumulative evidence.

counsel,[11] each referred to his involvement in drug trafficking and referred to him as a drug dealer.  Additionally, in light of the sentencing court's limiting instruction as to the significance and weight the jury was to place on his drug involvement with respect to the murder charge, this court does not find that the admission of Mr. Rodriguez's involvement in drug trafficking "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).) Consequently, Mr. Rodriguez's claim of his trial counsel was deficient for failing to object to the prosecutor's introduction of his drug conviction is unfounded, meritless and will be denied.

**C.     Claim 3 - Whether Petitioner's Due Process and Equal Protection Rights were Violated when Trial Counsel Failed to Object to Prejudicial Remarks Made by the Prosecution During Closing Summation.**

Mr. Rodriguez claims his trial counsel was ineffective when he failed to object to the prosecution's closing argument which made reference to his decision not to testify at trial.  (Doc. 1, ECF p. 14.)  He claims the prosecution's comments as to this

---

[11]     Once you hear drug dealing, it does something.  That's why you got to be able, ladies and gentlemen, to really call it down the middle, and if you can't credit that testimony, then come back and say not guilty.

You may not like that he is a drug dealer, okay.  You don't like that.  I'll say it for you.  But you still, ladies and gentlemen, you got to do justice.

(Doc. 27-2, ECF pp. 228-29, Excerpt of Atty. Velez's Closing Argument.).

issue were so inflammatory that they "stripped the petitioner of his presumption of innocence." (*Id*., ECF p. 15.)  He argues his counsel's failure to object to the prosecution's poisonous remarks, or failure to seek a curative instruction, rendered the verdict unreliable.  (*Id*., ECF p. 16.)  For the reasons set forth below, the Pennsylvania Superior Court's rejection of this claim presented in Mr. Rodriguez's PCRA appeal was not contrary to, or an unreasonable application of, clearly established law.  28 U.S.C. § 2254(d)(1).  Likewise, he was not prejudiced as a result of the prosecutor's statement, and the Pennsylvania courts correctly applied United States Supreme Court precedent in finding that he was not eligible for relief. Therefore, Mr. Rodriguez's Third Claim will be denied.

The prosecutor made the following statements during his closing argument:

> It's a matter of fact they keep saying Adam Byke.  Adam Byke was executed seven weeks after this murder with a bullet in his head.  He is not a problem anymore.  He is out of this case.

> What is a concern to you, who orchestrated this murder?

> If you believe if I have convinced when we are done with this closing argument that these gentlemen here orchestrated and set up Edgar Day's murder then you are going to have to find murder in the first degree as accomplices.

> If you believe that I have convinced you one or both of them set him up to get a severe beating, then the Court will tell you, you must find him guilty of murder in the third degree, and we will go through the evidence at a later time.

> These Defendants and their counsel will have you believe it was Adam Byke that came down here to take care of his business.  I want you to consider something.

> Who in this case committed all the affirmative action?

-39-

> For instance, making phone calls, directing people to page Edgar Day, directing the girls to take them in the alley laying and waiting in darkness in a room these two Defendants, along with Adam Byke.
>
> Whose business are they really taking care of?
>
> Adam Byke's business or their own drug business?
>
> You might want to ask them yourself.
>
> Why didn't they do it themselves?
>
> Why didn't they kill him themselves?
>
> The same reason they have drug dealers and other people sell for them.  They have Michelle selling for them and Adam.  They don't want to dirty their hands, so they bring in somebody to do it, and it's uncontradicted Adam Byke stopped along the way with Felix's brother and got a gun.

(Doc. 27-2, ECF pp. 246 - 48.)  When charging the jury, the court gave the following

instruction with respect to Mr. Rodriguez's right not to testify at trial and what, if any,

inference the jury could draw from it.

> The Defendants have elected not to testify, and I must tell you that it is entirely up to a Defendant in every criminal trial whether or not to testify.  A Defendant has an absolute right founded on the constitution to remain silent.  You must not draw any inferences of guilty or any other inference adverse to the Defendant from the fact that he did not testify.

(*Id*., ECF p. 277.)

The last reasoned state court decision addressing this claim is the Pennsylvania

Superior Court's order affirming the PCRA court's denial of his first PCRA petition.

(Doc. 27-2, ECF pp. 416 - 22.)  The Pennsylvania Superior Court upheld the denial of

this claim on the basis that "[e]ven if we were to find this remark an improper comment

on Appellant's failure to testify, it does not warrant a new trial because it was harmless."

(Doc. 27-2, ECF p. 420.)

A criminal defendant has an absolute right to refrain from testifying. *Commonwealth v. Lewis*, 528 Pa. 440, 598 A.2d 975 (1991). "As a general rule, any comment that the prosecuting attorney makes regarding defendant's election not to testify is a violation of the defendant's right against self incrimination as guaranteed by the Fifth Amendment of the United States Constitution, Article I, Section 9 of the Pennsylvania Constitution and by statute, codified at 42 Pa.C.S.A. § 5941." *Commonwealth v. Trivigno*, 561 Pa. 232, 243, 750 A.2d 243, 248 (2000)(citation omitted). However, "where [it is beyond a reasonable doubt that] the properly admitted an uncontroverted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict[,]" the improper references to a defendant's silence are deemed harmless. *Trivigno*, 561 Pa. at 246, 750 A.2d at 250 (quoting *Commonwealth v. Rodriguez*, 533 Pa. 555, 562, 626 A.3d 141, 144 (1993) ("Rodriguez II")). It has been emphasized that a court must not arrive at a harmless error determination lightly where an error of constitutional proportions is at issue. *Rodriguez II*, 533 Pa. at 562, 626 A.2d at 144.

In the present case, a panel majority of this Court has previously found that "the evidence of appellant's guilt was overwhelming." *Rodriguez, supra.*, No. 870 Harrisburg 1997, unpublished memorandum at 11 (Pa. Super. filed September 2, 1998). Moreover, the prosecutor's statement could not have possibly contributed to the jury's verdict where it was but a brief, passing remark in fifteen pages of argument devoted otherwise to the evidence presented at trial, and where it at worst offered an indirect reference to Appellant's silence. Finally, the trial court gave an instruction cautioning the jury not to make any inferences from the failure of the defendants to testify. N.T. 7/17/97 at 651.

The record before us, therefore, confirms that the prosecutor's statement constituted harmless error, as it could not have in any way contributed to the jury's verdict. *See Trivigno, supra.* (finding harmless error where passing

-41-

reference occurred amidst overwhelming evidence  and a cautionary instruction).   Thus showing neither arguable merit to the issue underlying his claim nor prejudice suffered, Appellant may obtain no relief on his first ineffectiveness claim. *See Rollins*, *supra*; *Thomas*, *supra.*

(Doc. 27-1, ECF p. 420 - 21.)

A criminal defendant's Fifth Amendment right against self-incrimination, applied to the states by the Fourteenth Amendment, forbids comment by the prosecution on a defendant's decision not to testify. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); *see also Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)("*Griffin* prohibits the judge and prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt."))  "A prosecutor's comment constitutes reversible error only if it 'was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" *United States v. Pawlowski*, 682 F.3d 205, 210 (3d Cir. 2012)(quoting *Lesko v. Lehman*, 925 F.2d 1527, 1544 (3d Cir. 1991).)  "[C]ourts will not reverse when the prosecutorial comment is a single, isolated incident, does not stress an inference of guilty from silence as a basis of conviction, and is followed by curative instructions." *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987).

When determining whether a prosecutor has impermissibly commented on a defendant's right against self-incrimination, "we must examine the challenged prosecutorial remark in its trial context." *Lesko*, 925 F.2d at 1544 (citations omitted). Where an error occurs, the inquiry then becomes whether, in light of the record as a whole, the prosecutor's conduct "had substantial and injurious effect or influence in

determining the jury's verdict." *Brecht v. Abramson*, 507 U.S.   619, 638, 113 S.Ct. 1710, 1722, 123 L.2d. 353 (1993).

In this case, the state court's decision was based on a reasonable determination of the facts in light of the evidence presented.  Relief is not warranted as the prosecutor's comments did not constitute any error, much less fundamental error in this case.  The findings of the superior court are sound.  As held by the superior court, taken in context of the rest of the closing, even if the prosecutor's comment indirectly referenced Mr. Rodriguez's silence, the remark was brief and fleeting.  Add to this consideration the cautionary instruction delivered by the trial court specifically directing the jurors that no inference of guilt or other adverse inference can be drawn from his decision not to testify, it cannot be said that the prosecutor's allegedly prejudicial statement "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181, 106 S.Ct. at 2471.  Moreover, as previously noted by the state court, the evidence presented at trial of Mr. Rodriguez's guilt "was overwhelming."  (Doc. 27-2, ECF p. 421.)  In light of the stated reasons supporting the Pennsylvania Superior Court's ruling, this court finds that any improper reference to Mr. Rodriguez's decision not to testify at trial was harmless error because it did not have a "substantial and injurious effect or influence" in determining the verdict. *Brecht*, 507 U.S. at 623, 113 S.Ct. at 1714.  Under these circumstances, the prosecution did not commit misconduct, and Mr. Rodriguez's trial counsel did not have a duty to object.  Accordingly, the record reflects that Pennsylvania Superior Court reasonably rejected Mr. Rodriguez's claim

of his trial counsel's deficient performance.  Mr. Rodriguez's third ineffective

assistance of counsel claim lacks merit and will be denied.

> **D.     Claim 4 - Whether Petitioner's Due Process and
> Equal Protection Rights were Violated when Trial
> Counsel Allowed the Petitioner's Unconstitutional
> Detention to go Unchallenged**.

Mr. Rodriguez claims that he did not murder Mr. Day and "never agreed with

anyone to commit a murder."  (Doc. 1, ECF p. 18.)  He declares that "[t]rial counsel

allowed the petitioner to stand convicted of a crime he could not possibly be

convicted of."  (Doc. 12, ECF p. 10.)  Mr. Rodriguez argues that the evidence

demonstrates that Adam Byke conspired with Michelle Ocasio and Monique Wells to

kill Mr. Day, and that it was Adam Byke who actually shot the victim.  Mr. Rodriguez

claims he did not aide Mr. Byke kill Mr. Day.  (Doc. 29, Traverse, ECF p. 7.)  Mr.

Rodriguez claims his counsel was ineffective for allowing him, an innocent man, to

be convicted.  (Doc. 12, ECF p. 10.)  Based on the wording of Mr. Rodriguez's

Fourth Claim, the court liberally construes this claim as raising a sufficiency-of-the-

evidence claim.

The last reasoned decision on this is the Pennsylvania Superior Court's

decision denying his appeal from his judgment of sentence.  In its analysis of this

claim, the Pennsylvania Superior Court was guided by the following standard of

review:

> When reviewing a sufficiency of the evidence claim, this
> Court "must determine whether the evidence was sufficient
> to establish that the fact finder could have reasonably
> determined that all of the elements of the offenses were

> proven beyond a reasonable doubt." *Commonwealth v. Michael*, 544 Pa. 105, 110, 674 A.2d 1044, 1047(1996). An appellate court must review the evidence in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Harris*, ___ Pa. ___, ___, 703 A.2d 441, 445 (1997). Moreover, we review the evidence, not simply alone, "but with all the inferences and conclusions that reasonably and logically can be drawn therefrom." *Commonwealth v. Dooris*, 548 Pa. 210, 211, 696 A.2d 152, 153 (1997).

(Doc. 27-2, ECF p. 334.)

The Superior Court's analysis is clearly in accord with applicable federal law. Sufficiency of the evidence claims are governed by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319, 99 S.Ct. at 2789.

When historical facts support conflicting inferences, the habeas court engaging in sufficiency of evidence review must presume that the trier of fact resolved any such conflicts in favor of the prosecution. *Id*. at 326, 99 S.Ct. at 2793. Further, when applying the sufficiency of the evidence test, a habeas court must consider the types of evidence the state courts considered relevant to proving the elements of the offense at issue.[12] *Id*. at 324, 99 S.Ct. at 2792. This review is

---

[12] The Third Circuit has noted that, when applying the sufficiency of the evidence test, the habeas court should "look to the evidence the state considers adequate to meet the elements of a crime governed by state law." *Jackson v. Byrd*, 105 F.3d 145, 149 (3d Cir. 1997).

essential inasmuch as the elements of the criminal offense are defined by state law. *See Id*. at 324 n.16, 99 S.Ct. at 2792 n. 16.

Under Pennsylvania law, third degree murder is defined as "all other kinds of murder" other than first degree murder or second degree murder.  18 PA. CONS. STAT. ANN. § 2502(c).  "Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice."  *Commonwealth v. Truong*, 36 A.3d 592, 597 (Pa. Super. 2012)(*en banc*) (citation omitted), *appeal denied*, 618 Pa. 688, 57 A.3d 70 (Pa. 2012).

> Malice is defined as: wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured[.] Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.  Malice may be inferred by considering the totality of the circumstances.

*Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super. 2011).  The Commonwealth is not required to prove intent to harm as apart of its proof that to a defendant acted with malice.  *Commonwealth v. Miller*, 426 Pa. Super. 410, 416, 627 A.2d 741, 744 (Pa. Super. 1993).  "[T]he inference from the use of a deadly weapon upon a vital part of the body alone is sufficient to establish malice." *Commonwealth v. Cruz-Centeno*, 447 Pa. Super. 98, 668 A.2d 536, 540 (Pa. Super. 1995).

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 PA. CONS. STAT. ANN. § 903(a).  To obtain a conspiracy conviction, "an overt act in pursuance of such conspiracy [must be] alleged and proved to have been done by [the defendant] or by a person with whom he conspired."  *Id*. § 903(e).

In the case at bar, the Pennsylvania Superior Court agreed "with the trial court's determination that the evidence of [Mr. Rodriguez's] guilt 'was overwhelming.'" (Doc. 27-2, ECF p. 336.)

> In order to support a verdict of murder in the third degree, the Commonwealth must establish that the defendant committed an unlawful killing with the requisite intent of malice. *Commonwealth v. Gonzalez*, 609 A.2d 1368, 1369 (Pa. Super. 1992). With regard to appellant's intent, Nesbit testified that appellant wanted to confront and/or "beat up" Day (N.T., Vol. I, at 195).  Additionally, Wells testified that appellant, Colon and Eric Rodriguez "was all saying about going over [to Day's house] and shooting up the place." (N.T., Vol. I, at 314.)    Finally, the evidence clearly demonstrated that appellant's co-conspirator walked up to Day, put a gun to Day's head, and pulled the trigger. Obviously, the jury could have inferred that appellant acted with malice. *Commonwealth v. Ly*, 528 Pa. 523, 537, 599 A.2d 613, 619 (1991); *Commonwealth v. Marks*, 704 A.2d 1095, 1100 (Pa. Super. 1997).

(Doc. 27-2, ECF p. 335.)

The court finds, that after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of third degree murder and conspiracy beyond a reasonable doubt.  Thus, the court

cannot find the Superior Court's application of the *Jackson* standard to petitioner's sufficiency claim was "objectively unreasonable."  Accordingly, neither trial counsel, nor direct appeal counsel could have been ineffective for failing to raise a meritless claim.

**V.      Certificate of Appealability Denied**

Pursuant to 8 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealabilitly (COA), an appeal may not be taken from a final order in a proceeding under 8 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  8 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller–El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 1034, 154 L.Ed.2d 931 (2003).  Based on the analysis in this memorandum, there is no basis for the issuance of a COA.

**VI.     Conclusion**

Based on the foregoing discussion, the petition for writ of habeas corpus will

be denied.  Petitioner is advised that he has the right for thirty (30) days to appeal

the court's Order denying his habeas petition, *see* 8 U.S.C. § 2253(a); Fed. R. App.

P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent

him from doing so, as long as he also seeks a certificate of appealability from the

United States Court of Appeals for the Third Circuit.  *See* Fed. R. App. P. 22(b);

Local Rule of Appellate Procedure 22.1.

An appropriate Order follows.

                                        **/s/ A. Richard Caputo**
                                        **A. RICHARD CAPUTO**
                                        **United States District Judge**

**Date: March 2, 2015**